LADOR, INC. *v.* UNITED STATES (No. 5036)[1]

United States Court of Customs and Patent Appeals, November 3, 1960

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Joseph Schwartz*, of counsel) for appellant.

---

[1] C.A.D. 753.

George S. Leonard, Acting Assistant Attorney General, Richard E. FitzGibbon, Chief, Customs Section (Richard H. Welsh, trial attorney, of counsel) for the United States.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

RICH, Judge, delivered the opinion of the court:

The issue is whether the imported merchandise was correctly classified by the collector as "parts of music boxes" under paragraph 1541(a) of the Tariff Act of 1930, as amended by T.D. 48093, with duty at 20% ad val.

The Customs Court dismissed the importer's protest that the merchandise should be classified as "machines * * * not specially provided for" under paragraph 372, as modified by the Sixth Protocol of Supplementary Concessions to GATT, T.D. 54108, with duty at 13% ad val.

The importations, invoiced as "musical movements," are perhaps most succinctly described in lay, as distinguished from legal, terminology as small Swiss music box works of the familiar kind wherein rotation of a spring-driven cylinder studded with pins makes music by plucking the fingers of a tuned steel comb. The invoices included the designation "$\frac{1}{18}$" which appears to mean that the movement plays one tune and has a comb with 18 teeth providing 18 notes.

Appellant's argument against the classification proceeds thus: (1) unless the imported movements or works are dedicated to use as parts of music boxes and are useful for no other purpose they cannot be "parts" of music boxes under the tariff law, for which proposition it cites National Carloading Corp. v. United States, 44 CCPA 77, C.A.D. 640; (2) appellant has proved that it has used the imported works in "musical novelties" which are not music boxes under the decision in Thorens, Inc. v. United States, 31 CCPA 125, C.A.D. 261; wherefore, the works are not "parts of music boxes."

The Thorens case was not concerned with the classification of parts of any kind. The merchandise was a wooden toilet paper roll holder containing a musical movement of the general type here involved which played music when paper was withdrawn from the holder. It was classified as manufactures in chief value of wood and claimed to be dutiable either as a music box or as a machine. The overruling of the protest was affirmed by this court on the ground that the articles were "clearly more than music boxes." [Our

emphasis.] Being more than music boxes, it was held that they could not be classified for duty *as* music boxes. This is very clear from the citation in the opinion of other cases wherein articles combined with other things were not classified as the uncombined article because they were more than that article. But it must be noted that in the *Thorens* case this court said that the toilet roll holders were "toilet roll holders *in combination with music boxes.*" [Our emphasis.] Moreover, the court expressed agreement with the Customs Court holding that "the music box feature" of the holder was incidental to the main purpose of the article and that "it would be somewhat anomalous to permit the mechanism in the incidental [i.e. the music box] feature to govern the classification of the article taken as a whole." It thus clearly appears that, far from saying no music box was involved, the court was of the view that the roll holder included a "music box." The case is, therefore, scarcely a precedent for holding that if parts of that music box had been imported they would be excluded from classification as such because the music box was added to or incorporated in another article. ▪

Quite the opposite, in the absence of compelling reasons to the contrary, that which is in fact a part of a music box should remain such, in the interest of stability and uniformity in classification, even when the music box is incorporated in other things not dutiable as music boxes.

Two witnesses were called by the importer, its president and its secretary and factory manager. A number of exhibits were introduced. Exhibits 1, 2 and 3 are musical movements or works exemplary of the importations and do not differ from each other in any respect material here. They are unmounted metal works, operable to produce recognizable tunes but have no sounding boards or enclosures.

The evidence shows that these works, which are of small size, obviously inexpensive, and with a limited number of notes, are installed by appellant in and become parts of beer steins,* atomizers,* teapots, decanters, cocktail shakers, powder boxes,* cake plates, jewelry boxes, cigarette boxes, Christmas trees, choir boys,* Madonnas, and other unnamed novelties to an alleged total of 300 items. The record also shows that appellant, while thus using the imported works in its own manufactures, also sells the works to others. The record does not show what appellant's customers do with them beyond the fact that some of them are used in similar novelties. There is no showing that they

---

*The items marked with this asterisk were illustrated by exhibits consisting of the articles themselves. The stein and atomizer have music boxes in their bases, the powder box is a metal music box with a shallow depression in the top to hold a puff and the choir boys are china figurines.

are not or could not be used in "music boxes." The record also shows that the same works are imported by a minimum of a dozen other importers and there is no further evidence of the uses to which these other importers put them.

To sum up the record, it establishes that appellant is but one of more than a dozen importers of these "$\frac{1}{18}$" musical movements, that it sells part of the movements it imports to others who use them for the most part in undisclosed ways, and that in its own factory it uses the imported movements to make "novelties" which it contends are not "music boxes" under the *Thorens* case. Even if we concede the latter contention, it is still not established that the novelties do not contain "music boxes." While perhaps the *Thorens* case is precedent for saying that an article which is *more than* a music box, such as a beer stein or an atomizer or a cocktail shaker, cannot be *classified* as a music box under the tariff act, it is no precedent at all for saying that such novelties do not *contain* music boxes and that the musical mechanisms therein are not parts of music boxes. For this reason alone appellant has failed to carry its initial burden of showing that the collector's classification of the merchandise as parts of music boxes is erroneous.

With respect to appellant's citation of and reliance on a passage from the *National Carloading Corp.* case, supra, we have a few remarks to make although they will be *dicta*, since they are unnecessary to the decision, as was the passage from that case upon which appellant relies.

Appellant relies on the *National Carloading* case as standing for the proposition that for an article to be a "part" of a machine or the like, "it must have been manufactured and dedicated solely for use with a particular article and * * * be useful for no other purpose." Not even the passage of dictum relied on goes that far. We did say, with citation of authority, that if merchandise is to be classified by ultimate use, it must be "dedicated" to such use but we did not define "dedication" or so limit that concept as to preclude the possibility of some other use. We were considering whether electric light sockets were "parts of lighting fixtures" (which was a side issue in the case in connection with some legislative history) and we pointed out that they had "substantial and widespread" use apart from use in lighting fixtures. Under this circumstance we said they were not to be considered to be parts of lighting fixtures even though often used in them. The actual case there before us did not, however, involve classification under a "parts" provision. The question was whether the push-button electric light sockets were articles of metal n.s.p.f., as classified, under paragraph 397, or electrical wiring devices under paragraph 353. So,

as we have indicated, what we said about dedication for use as parts was obiter and not binding on us here.

We see no parallel between the question of whether a complete entity like an electric light socket is to be deemed a part of a lighting fixture and the question before us of whether Swiss musical movements are parts of music boxes. The sockets could be used by themselves, if attached to wires. The musical movements are but parts of something else, not ready for or capable of independent use. The collector is presumed to have found the facts necessary to his conclusion that the something else was "music boxes." The evidence produced by appellant is not sufficient to upset that conclusion.

The other point in the case is the question of whether the musical movements are "machines." We do not reach it as it is necessary to consider this point only if the collector's classification is first shown to be erroneous. Appellant would have to establish the claimed "machine" classification to prevail and has attempted to do so. However, this is not one of those cases in which establishing the affirmative of the classification sought for *ipso facto* shows error in the collector's classification, for showing affirmatively that the movements are "machines" does not negative the finding that they are "parts of music boxes." They may very well be both in a technical sense but they cannot be classified as "machines" until after it has been established that they are not "parts of music boxes" for tariff purposes.

The judgment of the Customs Court overruling the protest is *affirmed*.